UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

CASSY ANDERSON,

               Plaintiff,

   v.

INTEL CORPORATION,

               Defendant.

Case No. 3:20-cv-02138-AC
OPINION AND ORDER

_____

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Cassy Anderson ("Anderson") sues Defendant Intel Corporation ("Intel") for negligence ("claim one"); violation of the State of Oregon's Employers' Liability Law ("ELL") under OR. REV. STAT. § 654.305 ("claim two"); violation of the ELL under OR. REV. STAT. § 654.310 ("claim three"); negligence *per se* under the Oregon Safe Employment Act ("OSEA") ("claim four"); and violation of premises liability ("claim five"). Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), Intel moves to dismiss claims one through four (Def.'s Mot.,

Page 1 – OPINION AND ORDER

ECF No. 4 ("Mot.")).   For the following reasons, Intel's motion is granted in part and denied in part.[1]

*Factual Background*

Anderson was working as an apprentice electrician for a subcontractor hired by Intel called EC Electric.   (Complaint, ECF No. 1-1 ("Compl."), at ¶ 2.)   On or about November 19, 2018, Anderson was injured while working at Intel's Ronler Acres Campus while performing maintenance work in the cleanroom on the upper floor of Intel's D1B building with her journeyman, Jerry Haley.   (Compl. ¶¶ 2, 3.)   At Intel's direction, EC Electric used the basement in the D1B building to store its equipment.   (Compl. ¶ 3.)   Anderson walked down to the basement, followed the designated walkway, and stepped on an approximately one-by-three-inch brass-colored pipe strap laying loose on the floor.   (Compl. ¶¶ 4, 6.)   When her right foot stepped on the pipe strap, it slid out from underneath her and she fell hard onto the walkway, striking her right hip and elbow on the concrete surface.   (Compl. ¶ 4.)   The surface was smooth, grey concrete with yellow diagonal lines painted on it, each line approximately two inches wide and spaced approximately one foot apart from each other, and most of it dusty.   (Compl. ¶ 5.) Anderson described the basement as "busy" visually, with pipes, chains, and utilities overhead and on both sides of the walkway.   (Compl. ¶ 5.)

Anderson fell near a designated "laydown" area where Intel directs workers from various trades, including EC Electric, to put their toolboxes, parts, and supplies.   (Compl. ¶ 6.)   After her fall, Anderson recognized the pipe strap she slipped on as a common one used throughout the

---

[1] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).   The court finds disposition of this motion appropriate without oral argument.   LR 7-1(d)(1).

facility but different from the electrical-type fitting that EC Electric would have used.    (Compl. ¶ 6.)    Earlier that same morning, Anderson had been in the basement twice and had not seen the pipe strap on the floor.    (Compl. ¶ 6.)    She never saw Intel employees, known as "Blue Badges," monitor or inspect the basement for hazards, such as loose parts or supplies lying on the floor. (Compl. ¶ 6.)    Workers from the various trades who used the basement and the laydown area, including EC Electric, had complained to Intel about the basement's poor lighting.    (Compl. ¶ 7.) The area at which Anderson fell featured only some lighting and it provided minimal illumination. (Compl. ¶ 7.)

As a result of the fall, Anderson suffered a right hip labral tear, right hip pain, and a swollen and sore right elbow.    (Compl. ¶ 9.)    The right hip labral tear required Anderson to undergo surgery.    (Compl. ¶ 10.)    As a result of Anderson's injuries, she incurred medical, hospital, doctor, therapy, nursing, and rehabilitation expenses, and she requires further surgery to release the Psoas tendon in her right hip.    (Compl. ¶ 11.)    Anderson has incurred lost wages and will continue to incur lost wages and/or earning capacity in the future.    (Compl. ¶ 11.)

*Legal Standard*

Under Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).    A court may grant a motion to dismiss "'based on the lack of a cognizable legal theory or the absence of sufficient facts alleged'" under a cognizable legal theory.    *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also CallerID4u, Inc. v. MCI Commc'ns Servs. Inc.,* 880 F.3d 1048, 1061 (9th Cir. 2018). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. When a plaintiff's complaint pleads facts that are "merely consistent with" a defendant's liability, the plaintiff's complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted). The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Teixeira*, 873 F.3d at 678; *see also Iqbal*, 556 U.S. at 679; *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1157 (9th Cir. 2017).

Rule 8(a)(2) requires complaints in federal court consist of "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" The pleading standard under Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also* FED. R. CIV. P. 8(a)(2). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555. But a claim "may proceed even if it strikes a savvy judge that actual proof of [necessary] facts is improbable," and the plaintiff is unlikely to succeed on the merits. *Id.* at 556. Leave to amend should be given freely when justice so requires, unless the court determines the pleading could not

Page 4 – OPINION AND ORDER

possibly be cured by the allegation of other facts.  FED. R. CIV. P. 15(a)(2); *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

Oregon law governs Anderson's claims.  *See Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938); *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980) ("The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that vindication of the state right is without discrimination because of the federal forum.").  When applying state law, a federal court is bound by the decisions of the state's highest court.  *Ticknor v. Choice Hotels Int'l., Inc.*, 265 F.3d 931, 939 (9th Cir. 2001).  If there is no binding decision on a relevant issue of law, the federal court must apply the law as it believes the state's highest court would apply it.  *Id.*  In determining how a state's highest court would apply state law, the federal court may consider "intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises and restatements for guidance."  *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (internal citations omitted).

*Discussion*

I.    Anderson's Common-Law Negligence and Premises Liability Claims Are Not Duplicative

Anderson sues Intel in claim one for negligence and claim five for premises liability. (Compl. ¶¶ 1, 10.)  Intel argues claims one and five are duplicative because Anderson bases the claims on Intel's status as the possessor of land and Anderson's status as an invitee.  (Mot. at 5.) Intel argues that because Anderson invokes her status as an invitee in her premises liability claim, she may not proceed under a general negligence theory and the negligence claim should be dismissed as duplicative.  (Mot. at 5-6.)  Anderson responds that invoking her status as an invitee for her premises liability claim does not render her negligence claim duplicative and under

Rule 8(d)(3), because she may raise alternative claims of recovery.    (Pl.'s Resp., ECF No. 6

("Pl.'s Resp."), at 6.)    Additionally, Anderson contends that she adequately pleads foreseeability.

(Pl.'s Resp. at 6.)

For a successful common-law negligence claim, a plaintiff need allege only that the

defendant's conduct unreasonably created a foreseeable risk of harm.    *Groeneweg v. JELD-WEN,*

*Inc.*, Case No. 6:20-cv-01030-AA, 2020 WL 7265366, at *2 (D. Or. Dec. 10, 2020).    However,

if a plaintiff alleges a special relationship exists between herself and the defendant, "the test for

ordinary negligence may not apply if a party invokes 'a status, a relationship, or a particular

standard of conduct that creates, defines, or limits the defendant's duty.' . . .    That is because 'the

nature and scope of the duty owed by the defendant to the plaintiff can be created, defined, or

limited based on, among other things, the relationship between or status of the parties.'"    *Sloan*

*on behalf of Est. of Sloan v. Providence Health Sys.-Oregon*, 364 Or. 635, 644 (2019) (citations

omitted).    For example, under a premises liability claim when a plaintiff alleges she is an invitee

and the defendant is a land possessor, the plaintiff must allege the defendant breached his duty "to

protect [her] against those dangers that were known to the possessor, or about which the possessor

should have known by the exercise of reasonable care."    *Cain v. Bovis Lend Lease, Inc.*, 817 F.

Supp. 2d 1251, 1273 (D. Or. 2011).

The court agrees with Anderson that a plaintiff may allege negligence and premises liability

claims in the alternative.    *See Miller v. Goodyear Timer & Rubber Co.*, 434 F. Supp. 3d 877, 882

(D. Or. 2020) (recognizing that "[t]he Oregon Supreme Court has allowed cases to proceed with

negligence claims under both the ordinary negligence standard and the ELL standard.") (citing

*Miller v. Georgia-Pacific Corp.*, 294 Or. 750, 754 (1983)).    Here, Anderson pursues alternative

theories of liability:    she sues Intel for negligence because she slipped and fell on a pipe strap in the basement of Intel's D1B building, and for premises liability because of Intel's failure to maintain a reasonably safe premises for Anderson as a business invitee.    (Mot. ¶¶ 4, 32-35.) Accordingly, Intel's motion to dismiss claim one as duplicative of claim five is denied.

II.    Claims Two, Three, and Four and Oregon's Employers' Liability Law

Intel moves to dismiss claims two, three, and four, arguing that the ELL does not apply to the circumstances of Anderson's accident.    (Mot. at 6, 10.)    Intel's argument is twofold:    (1) Anderson's work was not "inherently dangerous," and (2) Anderson has not sufficiently alleged Intel was an indirect employer.    (Mot. at 6, 10.)    Anderson responds that whether her work involved risk or danger is a question for the jury, and that she sufficiently pleaded Intel was an indirect employer under the ELL because Intel was (1) in a common enterprise; (2) retained the right to control; or (3) had actual control of her work conditions.    (Pl.'s Resp. at 13, 15-16.)

*A. OR. REV. STAT. § 654.305 Standards*

The ELL is "designed to ensure that employers provide safe premises for their employees" and imposes "a heightened statutory standard of care on a person or entity who is either in charge of, or responsible for, any work involving risk or danger."    *Groeneweg*, 2020 WL 7265366, at *4 (citing *Steiner v. Beaver State Scaffolding Equip. Co.*, 97 Or. App. 453, 457-58 (1989)); *Woodbury v. CH2M Hill, Inc.*, 335 Or. 154, 159 (2003).    Specifically, OR. REV. STAT. § 654.305 provides:

> Generally, all owners, contractors or subcontractors and other persons having charge of, or responsibility for, any work involving a risk or danger to the employees or the public shall use every device, care and precaution that is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices.

Oregon courts have determined that ELL liability may be imposed on a person or entity who: "'(1) is engaged with the plaintiff's direct employer in a "common enterprise;" (2) retains the right to control the manner or method in which the risk[-]producing activity was performed; or (3) actually controls the manner or method in which the risk[-]producing activity is performed.'" *Helland v. Hoffman Const. Co. of Or.*, Case No. 3:11-cv-01157-HU, 2013 WL 5937001, at *4 (D. Or. Nov. 3, 2013) (quoting *Woodbury*, 335 Or. at 160). The ELL protections, however, extend only to "employees engaged in work involving 'risk or danger.'" *Id.* (quoting *Golden v. Ash Grove Cement Co.*, No. CV 06–336–PK, 2007 WL 1500168, at *3 (D. Or. May 21, 2007)).

Anderson alleges Intel failed to maintain the basement walkway so that it remained free of potential hazards; failed to warn Anderson of the risk of harm created by loose parts on the walkway; failed to implement reasonable safety policies to ensure the walkways were clear of hazards; allowed the laydown area to be near the demarcated walkway surface such that it created a hazardous area; failed to provide adequate lighting along the walkway; failed to provide a skid-proof surface on the walkway; and violated more than one of the rules and regulations prescribed by the Department of Consumer and Business Services. (Compl. ¶¶ 8, 20, 25.)

*1. Risk or Danger*

To state a claim under OR. REV. STAT. § 654.305, Anderson must allege her work involves a risk or danger. *See Travis v. Knappenberger*, No. CIV. 00-393-HU, 2000 WL 1853084, at *7 (D. Or. Dec. 13, 2000). The Oregon Supreme Court has interpreted "work involving a risk or danger to . . . employees" under OR. REV. STAT. § 654.305 to include both the worker's discrete

task and the circumstances under which the worker performs that task.[2]    *Woodbury*, 335 Or. at 161-62 (holding the plaintiff's "work involving a risk or danger" was not merely "moving the boards to facilitate disassembly of the platform," but included "requiring [the] plaintiff to work at height during the assembly, use, and disassembly of the platform.").    Thus, under *Woodbury*, Anderson's work in the basement involves not only the task of walking to the laydown area, but also the manner in which she had to access to the laydown area which includes navigating the walkway, which was cluttered, poorly lit, dusty, and slippery.    (Pl.'s Resp. at 14-15.)

For Anderson's work to come under the ELL, her work must be so "'inherently dangerous or present[ ] dangers so uncommon that the employment would be classed as work involving "risk or danger[.]"'"    *Travis*, 2000 WL 1853084, at *7 (quoting *Kruse v. Coos Head Timber Co.,* 248 Or. 294, 304 (1967)).    "There are employments which, when considered in the abstract, are never spoken of as dangerous employments; and yet an employment which ordinarily and generally is a non-dangerous one may nevertheless, because of the presence of extraordinary and unusual conditions, be converted in some individual case into an employment inherently dangerous."    *Bottig v. Polsky*, 101 Or. 530, 546 (1921).    Courts have held summary judgment and on appeal that "'[w]here reasonable minds can differ, it is a jury question whether or not any particular work

---

[2] Oregon appellate courts have embraced the view that "work" includes the task and the circumstances rather than the narrow view – popular between 1930-1952 – that courts have rarely cited in the decades since.    *Barker v. Portland Traction Co.*, 180 Or. 586, 609-10 (1946).    The narrow view holds that "ELL protection is available only to '(1) employments which are attended with inherent risks and dangers, [and] (2) employments which are rendered hazardous through the use of machinery, scaffolding, dangerous substances, electrical devices, or other equipment and substances which are expressly enumerated in the act.'"    *Id.*; *Quirk v. Skanska USA Bldg., Inc.*, No. 3:16-CV-0352-AC, 2018 WL 2437537, at *8-9 (D. Or. May 30, 2018) (explaining that *McLean v. Golden Gate Hop Ranch of Or.*, 195 Or. 26 (1952), reflects an older, more limited concept of the ELL liability along with other cases in that era including *Wells v. Nibler*, 189 Or. 593 (1950), which relied on *Hoffman v. Broadway Hazelwood*, 139 Or. 519 (1932)).

Page 9  –  OPINION AND ORDER

involves "risk or danger.""" *Travis*, 2000 WL 1853084, at \*7 (quoting *Richardson v. Harris*, 238 Or. 474, 476-77 (1964)); *Mackay v. Comm'n of the Port of Toledo*, 77 Or. 611, 616 (1915) ("[t]he question as to whether or not the work involved a risk or danger is one of fact, to be determined by the jury, rather than a question of law[.]").

In *Travis*, the plaintiffs alleged the defendant violated the ELL because their employer failed to use every precaution practicable to protect employees, which failures led to repetitive motion injuries, back problems, and vision impairment. *Travis*, 2000 WL 1853084, at \*8. The court recognized that under Oregon law, "the applicability of the EL[L] is determined by reference to what activity the employee was actually engaged in at the time of the injury, not simply by the general type of work the employee was hired to do." *Id.* (citing *Bartley v. Doherty*, 225 Or. 15, 22-23 (1960)). The plaintiffs failed to allege a set of facts capable of supporting an ELL claim, instead alleging only that their "employment at defendant's office involved a risk or danger." *Id.* The court held "without some specific allegations indicating that an injury occurred outside of the ordinary, everyday risks seen in an office environment, plaintiffs' claim [could not] survive." *Id.*

Unlike the plaintiffs in *Travis*, Anderson alleges sufficient facts to support her claim that the work involved risk or danger. She alleges the work involved not just the ordinary, everyday risk of retrieving parts from the laydown area, but instead retrieving parts from the laydown area under the risky or dangerous conditions because the area was cluttered, poorly lit, dusty, and slippery. (Pl.'s Resp. at 14-15.) Therefore, viewing the alleged facts in favor of the plaintiff, the court finds that Anderson sufficiently alleges facts sufficient under this prong of the ELL.

\\\\\

\\\\\

Page 10 – OPINION AND ORDER

### 2. Control

Intel argues Anderson asserts only conclusory allegations to support her claim that Intel is an indirect employer under the ELL.    (Mot. at 5-6.)    Anderson responds that she has adequately pleaded Intel is an indirect employer under the ELL because Intel had "control and direction" over the risk-producing instrumentality.    (Pl.'s Resp., at 15-16.)    Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief."    Although the rule does not require "detailed factual allegations," conclusions or formulaic recitations of the elements of a claim are not sufficient.    *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

The ELL imposes liability on "all owners, contractors, or subcontractors and other persons having charge of, or responsibility for" work involving risk or danger.    OR. REV. STAT. § 654.305. Under the ELL, a plaintiff may hold an indirect employer liable who "'(1) is engaged with the plaintiff's direct employer in a "common enterprise"; (2) retains the right to control the manner or method in which the risk-producing activity was performed; or (3) actually controls the manner or method in which the risk[-]producing activity is performed.'"    *Yeatts Whitman v. Polygon Nw. Co.*, 360 Or. 170, 179 (2016) (quoting *Woodbury*, 335 Or. at 160).    Although the language of the indirect employer test refers to "risk-producing activity" rather than risk-producing "work," the *Woodbury* court made clear that the indirect-employer analysis embraces the same broad definition of "work involving risk or danger" to include the worker's discrete task and the circumstances under which it was performed.    *Woodbury*, 335 Or. at 160-63 (reversing lower court's "narrow" construct of "work involving risk or danger" within the context of its indirect employer liability analysis); *see also Spain v. Jones*, 257 Or. App. 777, 793-94 (2013) (implicitly equating a "risk-producing activity" with "work involving a risk or danger" under the ELL).

Anderson sufficiently alleges beyond conclusory statements that, under the ELL, Intel is her indirect employer.    Under the common enterprise test, an indirect employer may be held liable where

> (1) both the direct (plaintiff's employer) and the indirect (defendant) employer "participate in a project of which the defendant employer's operations are an 'integral' or 'component' part," (2) "the work must involve a risk or danger," as required by ORS 654.305, (3) the plaintiff must be an "employee" of the defendant employer, and (4) "the defendant must have charge of or responsibility for the activity or instrumentality that causes the plaintiff's injury."

*Quirk*, 2018 WL 2437537, at *10 (quoting *Sacher v. Bohemia, Inc.*, 302 Or. 477, 486-87 (1987)). To establish the plaintiff is an "employee" of the defendant-employer under the third factor, the plaintiff must be an adopted employee, an intermingled employee, or an employee of an independent contractor hired by the defendant where the defendant retains or exercises a right to control the risk-creating activity or instrumentality.    *Id.* (citing *Sacher*, 302 Or. at 486).

In *Arellano v. Lamb Weston, Inc.*, Civ. No. 2:20-cv-00371-SU, 2021 WL 666960, at *1 (D. Or. Feb. 19, 2021), the defendant operated a warehouse attached to the plaintiff's employer's receiving room.    The plaintiff, while working in the receiving room strapping racks to shipping pallets, became pinned between two pallets when the defendant's forklift operator shifted one of the pallets.    *Id.*    Plaintiff alleged the defendant violated OR. REV. STAT. § 654.305 and the defendant moved to dismiss the claim, arguing plaintiff failed to allege the defendant was his indirect employer.    *Id.* at *2.    The court held the plaintiff sufficiently pleaded a claim under the ELL.    *Id.* at *4.    The plaintiff alleged employees of both companies used the receiving room, which adjoined the defendant's warehouse, for moving shipping pallets, and that the defendant had "control over its forklift operators in the receiving room and it was that aspect of the joint . . . operation that is alleged to have caused" the plaintiff's injury.    *Id.* at *3, *4.    The court

Page 12  – OPINION AND ORDER

concluded that although the "contours of the relationship between" the plaintiff's employer and defendant "might have been more fully alleged, the allegations of the complaint [were] sufficient to establish a common enterprise for purposes of a motion to dismiss."    *Id.*

As in *Arellano*, Anderson's complaint here sufficiently alleges a claim under OR. REV. STAT. § 654.305, even if the contours of the relationship between Intel and EC Electric could have been more fully alleged.    As did the plaintiff in *Arellano*, Anderson here alleges two entities, EC Electric and Intel, participated in a common enterprise and that the work involved risk or danger. (Compl. ¶¶ 1(c)-(e), 6, 7, 8.)    Anderson alleges Intel hired EC Electric, which employed Anderson, to perform on-site service and repair of semiconductor manufacturing systems at Intel's Ronler Acres Campus, and that Intel controlled the risk-producing instrumentality when it directed EC Electric and other workers from various trades to put toolboxes, parts, and supplies in the designated laydown area along the walkway in the basement of Intel's D1B building.    (Compl. ¶¶ 1(c)-(e), 6, 7, 8.)    She alleges Intel maintained actual control over the instrumentality – the basement walkway – because Intel directed EC Electric and other trades to store supplies in the laydown area where Anderson suffered her injury and that Intel failed to properly maintain the walkway so that it was safe for Anderson to navigate.    (Compl. ¶¶ 3, 6.)

Anderson's allegations of a common enterprise between EC Electric and Intel are sufficient to allege Intel was her indirect employer under the control theory, by alleging that Intel controlled "the work involving risk or danger as a whole."    *Quirk*, 2018 WL 2437537 at *14 (citing *Woodbury*, 335 Or. at 163); *see e.g.*, *Spain*, 257 Or. App. at 794 (denying summary judgment on actual control after a subcontractor painter fell at jobsite because a jury could have found defendant-indirect employer actually controlled "the 'work involving a risk or danger'—

specifically, the work involving a risk of falling—[which] included not only plaintiff's installation of plumbing fixtures on the second floor, but also his walk along the unprotected second-floor hallway.").

The court therefore finds Anderson has sufficiently pleaded Intel is her indirect employer and, thus, that she has pleaded a plausible claim for relief under OR. REV. STAT. § 654.305. Accordingly, Intel's motion to dismiss claims two, three, and four is denied.

III.    Negligence *Per Se*

A. OR. REV. STAT. *§ 654.022*

In claim four, Anderson alleges Intel violated one or more safety codes and that those violations establish negligence *per se* under the OSEA, OR. REV. STAT. § 654.022.   (Compl. ¶ 30.)   Anderson alleges Intel violated one or more of the following safety codes:

a)  29 C.F.R. § 1910.22(a)(1)

b)  29 C.F.R. § 1910.22(a)(3)

c)  29 C.F.R. § 1910.22(d)(1)

d)  29 C.F.R. § 1910.22(d)(2)

e)  O.A.R. 437-002-0022(3)(a)

f)  O.A.R. 437-002-0022(3)(c)

g)  O.A.R. 437-002-0022(4)(f)

h)  29 C.F.R. § 1926.21(b)

i)  29 C.F.R. § 1926.21(b)(2)

j)  29 C.F.R. §§ 1926.26, 1926.56

k)  OR. REV. STAT. § 654.305

Page 14 – OPINION AND ORDER

(Compl. ¶ 25.)   Intel moves to dismiss claim four because Intel is not Anderson's direct employer and it is not an "owner" as defined under the OSEA.

To state a claim for negligence *per se* under the OSEA, a plaintiff "'must allege that:   (1) defendant[] violated a statute; (2) that plaintiff was injured as a result of that violation; (3) that plaintiff was a member of the class of persons meant to be protected by the statute; and (4) that the injury plaintiff suffered is of a type that the statute was enacted to prevent.'"   *Miller v. Goodyear Tire & Rubber Co.*, 434 F. Supp. 3d 877, 884 (D. Or. 2020) (quoting *McAlpine v. Multnomah Cty.*, 131 Or. App. 136, 144 (1994)).   Element one's reference to "a statute" refers to the "OSEA safety regulations."   *George v. Myers*, 169 Or. App. 472, 478 (2000).   While the OSEA cannot be a basis for a negligence *per se* claim against an indirect employer, it may be a basis against a direct employer or owner.[3]   *Miller*, 434 F. Supp. 3d at 884-85 (citing *George*, 169 Or. App. at 478; *Brown v. Boise-Cascade Corp.*, 150 Or. App. 391, 404 (1997)).   Owners must "comply with every requirement of every order, decision, direction, standard, rule or regulation prescribed by the Department of Consumer and Business Services in connection with the matters specified in" the OSEA, "or in any way relating to or affecting safety and health in employments or places of employment, or to protect the life, safety and health of employees in such employments or places of employment."   OR. REV. STAT. § 654.022.   Under the OSEA, an "owner" is "every person having ownership, control or custody of any place of employment or of the construction, repair or maintenance of any place of employment."   OR. REV. STAT. § 654.005(6).

---

[3] The Oregon Supreme Court previously held in *Miller v. Georgia-Pacific Crop.*, 294 Or. 750, 759 (1983), that OSEA safety codes "apply to all workplaces," but courts have interpreted this language to exclude indirect employers.   *Miller v. Goodyear Tire & Rubber Co.*, 434 F. Supp. 3d at 886 (citing *Brown*, 150 Or. App. at 409; *George*, 169 Or. App. at 484-85).

Page 15 – OPINION AND ORDER

The Oregon Court of Appeals has held that a "'defendant owner is liable only if the regulation whose violation underlies the OSEA is one that either explicitly, or by nature, imposes obligations on owners of premises.'" *Miller*, 434 F. Supp. 3d at 885 (quoting *Brown*, 150 Or. App. at 408). For a regulation to apply to an owner it must explicitly reference "owner(s)" or the regulation must pertain to workplace structure or safeguards. *Id.* If the regulation refers only to "employers," then it cannot establish negligence *per se* on an "owner." *Miller*, 434 F. Supp. 3d at 885; *see George*, 169 Or. App. at 484-85 ("By its terms, 29 CFRs [§]1926.501 expressly requires '*employers* to provide fall protections systems.' The regulation makes no reference to 'owners.' Rather, the regulation 'by its terms applies only to employers.' Accordingly, it cannot support the imposition of negligence *per se* liability [under OR. REV. STAT. § 654.022] against defendant *qua* owner." (internal citations omitted)). Thus, the question of OSEA owner liability reduces to the nature of the underlying violation and to whom it applies. *Quirk*, 2018 WL 2437537, at *18.

In *Groeneweg*, the plaintiff sued the defendant under OR. REV. STAT. § 654.022 for the injuries he sustained when he unloaded the defendant's shipment of windows from the defendant's trailer. 2020 WL 7265366 at *3. To bring a negligence *per se* claim under OR. REV. STAT. § 654.022, the plaintiff had to sufficiently allege the defendant was an "owner." *Id.* The plaintiff claimed,

> Defendant (1) was the only party to manipulate the contents of the trailer before the plaintiff's injury; (2) controlled how the shipment inside the trailer was organized and secured; (3) had custody of the trailer during the time it was at their facility before the plaintiff picked it up to travel; and (4) constructed the way the shipment was placed and secured inside the trailer.

*Id.* The defendant argued the plaintiff's allegations that the defendant was the owner of the trailer were conclusory. *Id.* The court, however, held the plaintiff's allegations supported the assertion

Page 16 – OPINION AND ORDER

that the defendant was the owner of the trailer and were not "threadbare conclusions." *Id.* The plaintiff alleged the defendant had control and custody of the trailer sufficient to plead the defendant was an owner of the trailer. *Id.*

Here, Anderson sufficiently alleges Intel is an "owner" under the OSEA because Anderson alleges that Intel had ownership, control, or custody of the Ronler Acre Campus, the D1B building, and the basement where Intel directed EC Electric and various other trades to store their supplies in the designated laydown area. (Compl. ¶¶ 1, 3, 6, 29.) However, the safety codes (a)-(i) that Anderson alleges Intel violated fail to establish the standard of care for a negligence *per se* claim under Anderson's "ownership" theory. Codes (a)-(i) do not support a negligence *per se* claim under the OSEA because the codes apply explicitly only to "employers" and not owners. *See* 29 C.F.R. § 1910.22(a)(1) (providing employers must ensure passageways and surfaces are clean, orderly, and sanitary); 29 C.F.R. § 1910.22(a)(3) (providing employers must keep walking-working surfaces free of hazards); 29 C.F.R. § 1910.22(d)(1) (providing employers must ensure walking-working surfaces are regularly inspected and maintained); 29 C.F.R. § 1910.22(d)(2) (providing employers must ensure walking-working surfaces are corrected and repaired); O.A.R. 437-002-0022(3)(a) (providing employers must ensure adequate storage space for materials and equipment); O.A.R. 437-002-0022(3)(c) (providing employers must ensure adequate platform space); O.A.R. 437-002-0022(4)(f) (providing employers must ensure walkways are free of hazards); 29 C.F.R. § 1926.21(b) (detailing employers' various responsibilities); 29 C.F.R. § 1926.21(b)(2) (providing employers must instruct each employee in the avoidance of unsafe conditions and the regulations to control or eliminate hazards). Because safety codes (a)-(i) apply only to "employers," Anderson cannot establish a claim for negligence *per se* under the OSEA as

Page 17 – OPINION AND ORDER

to those safety codes.  *See Miller*, 434 F. Supp. 3d at 885; *Brown*, 150 Or. App. at 408-09; *George*, 169 Or. App. at 484-85.  Accordingly, Intel's motion to dismiss Anderson's negligence *per se* claim as to safety code subsections (a)-(i) is granted.

Anderson also alleges negligence *per se* under safety codes of subsection (j) which are silent as to whom they apply.  29 C.F.R. §§ 1926.26 (providing construction areas and runways must satisfy minimum illumination requirements); 1926.56 (providing construction storage areas and runways must satisfy minimum lighting standards).  When safety codes do not reference the actor responsible, the court must determine whether the safety code applies to "owners."  *Miller*, 434 F. Supp. 3d at 885 (citing *Brown*, 150 Or. App. at 408).  Regulations "'which pertain to work practices or methods, as opposed to requirements pertaining to workplace structures or safeguards, may not apply to owners.'"  *Id.* (quoting *Brown*, 150 Or. App. at 408).  In *Brown*, the Oregon Court of Appeals found that the lighting regulations under 29 C.F.R. § 1926.26 and 29 C.F.R. § 1926.56 apply to owners.  150 Or. App. at 413 ("[O]wners are obligated, as a structural matter, to equip workplaces with lighting adequate for the work that ordinarily would occur within that type of work space.").  Thus, Anderson has alleged two safety codes that apply to Intel as an owner. *See* 29 C.F.R. §§ 1926.26, 1926.56.

The court now turns to the remaining three elements for Anderson to sufficiently allege a negligence *per se* claim under the OSEA, OR. REV. STAT. § 654.022:  whether Anderson was injured as a result of the violations; whether she was a member of the class of persons meant to be protected by those regulations; and whether she suffered the type of injury those regulations were intended to protect against.  *See Miller*, 434 F. Supp. 3d at 884.

First, Anderson alleges her injury resulted from Intel's violations of OSHA standards,

including minimal illumination in the basement.    (Compl. ¶¶ 8-9, 25-26, 31.)    Second, Anderson

alleges she was a worker in Oregon and therefore within the class of people meant to be protected

by the statutes.    (Compl. ¶ 1(d).); *see* OR. REV. STAT. § 654.003 (stating OSEA is intended to

"ensure as far as possible safe and healthful working conditions for *every working person in*

*Oregon.*" (emphasis added)); *Cain*, 817 F. Supp. 2d at 1265 (holding that a plaintiff-subcontractor

"clearly [fell] within the purview of statutes and regulations adopted for the protection of workers

in Oregon.").    And third, Anderson alleges her on-the-job injury is the type the OSEA is intended

to prevent.    (Compl. ¶ 31.); S*ee* OR. REV. STAT. § 654.003 (stating also "OSEA's purpose to

reduce the substantial burden, in terms of lost production, wage loss, medical expenses, disability

compensation payments and human suffering, that is created by occupational injury.").

Therefore, the court concludes Anderson sufficiently alleges a negligence *per se* claim under OR.

REV. STAT. § 654.022 under 29 C.F.R. §§ 1926.26, 1926.56, and denies Intel's motion to dismiss

claim four on that basis.[4]

B.  *OR. REV. STAT. § 654.310*

Anderson alleges negligence *per se* due to Intel's violations of safety codes pursuant to the

ELL, OR. REV. STAT. § 654.310.    (Compl. ¶ 25.)    OR. REV. STAT. § 654.310 is separate from

OR. REV. STAT. § 654.305's standards for "work involving risk or danger under" and provides:

> All owners, contractors, subcontractors, or persons whatsoever, engaged in the
> construction, repairing, alteration, removal or painting of any building, bridge,
> viaduct or other structure, or in the erection or operation of any machinery, or in
> the manufacture, transmission and use of electricity, or in the manufacture or use
> of any dangerous appliance or substance, shall see that all places of employment

---

[4] To the extent that Anderson relies on OR. REV. STAT. § 654.305, as a safety code, to allege Intel
violated OR. REV. STAT. § 654.022, such reliance is misplaced.    Section 654.305 is not a safety
code and does not contain safety violations, and thus cannot form the basis of a negligence *per se*
claim under OR. REV. STAT. § 654.022.

> are in compliance with every applicable order, decision, direction, standard, rule or regulation made or prescribed by the Department of Consumer and Business Services pursuant to ORS 654.001 to 654.295, 654.412 to 654.423 and 654.750 to 654.780.

Courts have held that OR. REV. STAT. § 654.310 imposes indirect employer liability under the ELL to the same extent and employing the same analysis as OR. REV. STAT. § 654.305. *Groves v. Max J. Kuney Co.*, 303 Or. 468, 475 (1987) (examining legislative history and development of the ELL and rejecting plaintiff's "attempts to widely separate" OR. REV. STAT. § 654.305 and § 654.310); *Quirk*, 2018 WL 2437537, at *24 (holding that *Groves* court's "conclusion that § 654.305 and § 654.310 were borne from the same legislative intent and should not be separated strongly supports an interpretation that *Brown* and *Woodbury*'s extension of ELL liability to indirect employers coextends to ORS 654.310.").

To establish a § 654.310 violation, Anderson must demonstrate that Intel violated an "applicable order, decision, direction, standard, rule or regulation made or prescribed by the Department of Consumer and Business services pursuant to ORS 654.001 to 654.295, 654.412 to 654.423 and 654.750 to 654.780." In *Quirk*, the court found plaintiff had sufficiently pleaded the defendant violated OR. REV. STAT. § 654.022 as an "owner." *Quirk*, 2018 WL 2437537 at *23. The plaintiff also alleged the defendant violated OR. REV. STAT. § 654.310 as an "indirect employer." *Id.* at *23-24. The court held the defendant was the plaintiff's indirect employer under OR. REV. STAT. § 654.305 and therefore also an indirect employer under OR. REV. STAT. § 654.310. *Id.* at *25. The plaintiff also alleged the defendant violated O.A.R. 437-002-0005 and O.A.R. 437-003-0001, promulgated by the Department of Consumer and Business Services. *Id.* The court held the violated regulations supported a violation of OR. REV. STAT. § 654.310 on the indirect employer-defendant and served as an additional basis for the plaintiff's negligence *per se*

Page 20 – OPINION AND ORDER

claim.  *Id.*

Like the plaintiff in *Quirk*, Anderson here alleges Intel, owner and occupier of the premises

where Anderson was injured, violated OR. REV. STAT. § 654.310 by failing to comply with the

following rules and regulations prescribed by the Department of Consumer and Business Services:

a)      29 C.F.R. § 1910.22(a)(1)

b)      29 C.F.R. § 1910.22(a)(3)

c)      29 C.F.R. § 1910.22(d)(1)

d)      29 C.F.R. § 1910.22(d)(2)

e)      O.A.R. 437-002-0022(3)(a)

f)      O.A.R. 437-002-0022(3)(c)

g)      O.A.R. 437-002-0022(4)(f)

h)      29 C.F.R. § 1926.21(b)

i)      29 C.F.R. § 1926.21(b)(2)

j)      29 C.F.R. §§ 1926.26, 1926.56

k)      OR. REV. STAT. § 654.305

(Compl. ¶ 25.)   As discussed above, Anderson sufficiently pleads Intel is her indirect employer

under OR. REV. STAT. § 654.305, which also makes Intel Anderson's indirect employer under OR.

REV. STAT. § 654.310.   *See Quirk*, 2018 WL 2437537 at *24.   Similar to the plaintiff's pleading

in *Quirk*, Anderson alleges that Intel, as an owner, contracted with Anderson's employer, EC

Electric, to perform "on-site installation, servicing, and repair of complex semiconductor

manufacturing systems . . . on the premises," and violated the above safety regulations.   (Compl.

¶ 24.)   And, as discussed above, Anderson sufficiently alleges a violation of safety regulations

Page 21 – OPINION AND ORDER

pursuant to 29 C.F.R. §§ 1926.26 and 1926.56.    Thus, the court concludes Anderson sufficiently

pleads a claim under OR. REV. STAT. § 654.310, and Intel's motion to dismiss claim three is

denied.[5]

### Conclusion

Based on the foregoing, Intel's motion (ECF No. 4) is GRANTED IN PART and DENIED

IN PART, as set forth herein.

IT IS SO ORDERED.

DATED this _14th_ day of April, 2021.

JOHN V. ACOSTA
United States Magistrate Judge

---

[5] To the extent that Anderson alleges Intel violated OR. REV. STAT. § 654.310 by relying on OR. REV. STAT. § 654.305 as a safety code fails.    Section 654.305 is not a safety code, nor does it contain safety violations and thus cannot form the basis of a negligence *per se* claim under OR. REV. STAT. § 654.310.

Page 22  – OPINION AND ORDER